United States Bankruptcy Court
Southern District of Texas
**ENTERED**
July 22, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT　　　SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| *In re* § § Aztec Oil & Gas, Inc., *et al.*, § § Debtors. § ———————————————— § § Fort Apache Energy, Inc., *et al.*, § § Appellants, § § *versus* § § Short OG III, Ltd., *et al.*, § § Appellees. § | | Bankruptcy 16-31895 Adversary 16-03173 Civil Action H-17-1252 |

# Opinion on Partial Summary Judgment

1. *Background.*

H.G. Hrivnatz, Sr. owned an undivided one-half interest in 112.174 acres in Tyler County, Texas. W.B. McBride and his wife owned the other half.

Fort Apache Energy, Inc., is an oil and energy company. It sued the working interest holders in this land to resolve ownership of competing mineral leases.

A. *McBride Interest.*

In 2009, McBride executed seven of eight leases to Miller Energy, Inc. The eighth lease belonged to Hrivnatz.

In 2011, Miller Energy assigned its leases to Resaca Resources. It drilled and made a well. Since then, the working interest holders have received production revenue from the well.

B.  *Hrivantz Interest.*

The McBride family conveyed the other half of the land to H.G. Hrivnatz, Sr. When Hrivantz, Sr. died, his will devised his estate: 50% to his wife, Vannie King Hrivantz, and 25% to each of his sons, Harry Hrivantz, Jr. and David A. Hrivantz, held in trust by Vannie for as long as she was alive. She held the executive rights to the land.

On January 1, 2009, Harry Jr. executed a lease to Miller Energy. Harry Jr. claimed he had the power to act as Vannie's attorney-in-fact through an unrecorded power of attorney. Because Harry Jr. did not have the power to execute the lease, this court determined that it was void.

In early 2011, Southern Star Exploration, LLC, and its agent, Fort Apache, discovered the Miller lease was ineffective. On February 10, 2012, Harry Jr. – as trustee of the testamentary trust, as trustee for the Vannie revocable trust, and attorney-in-fact for Vannie and David – signed the Southern Star Lease. This lease covered the same land as the Miller lease. Vannie executed a power of attorney for Harry Jr. that Southern Star promptly recorded.

The Southern Star Lease says:

> This lease shall remain in force for a term of three (3) years from the above date herein, hereinafter called the "primary term," and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

"Operations" in the lease is defined as:

> Whenever used in this lease the word "operations" shall mean all operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or any other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

During the term of the lease, Fort Apache did not operate on the land. It tried to negotiate a joint development agreement. In a hearing, Fort Apache said that it intended to use litigation as a leverage to join the ongoing production of land.

On January 19, 2015, Miller Energy had Keith Morris – the administrator of Vannie's estate– ratify the Miller lease in exchange for royalty payments. The probate court approved the ratification while a state court case over the title was pending on appeal.

In October 2019, Fort Apache ratified its rights to the mineral estate as part of a settlement with Harry Hrivnatz, Jr.

C. *Lawsuit.*

In 2012, Fort Apache sued Resaca Resources, LLC, and the working interest owners for: (a) equitable suit to quiet title; (b) declaratory judgment; (c) trespass to try title; (d) slander of title; (e) conversion/accounting; (f) money had and received; and (g) breach of contract. The Administrator of Vannie's estate joined as an interested third-party. The working interest owners countersued.

In 2016, the Ninth Court of Appeals affirmed the state trial court's denial of Fort Apache's motion for summary judgment.

On April 13, 2016, Aztec Oil & Gas, one of the working interest holders in the land, filed for bankruptcy. The state-court proceeding was removed to bankruptcy court and later transferred to this court. Short OG III, Ltd., and the other working interest holders' counterclaims and third-party claims are pending in an adversary proceeding.

This court issued an opinion holding that the Southern Star Lease is superior and that the Miller Lease and its ratification are void. The court has not decided whether the Southern Star Lease expired.

D. *Partial Judgment.*

In 2020, the Administrator of Vannie's estate moved for partial summary judgment on the expiration of the Southern Star Lease. The newly appointed Administrator of Vannie's estate withdrew the motion.

Short briefed the Court on the expiration. It did not formally file a motion for joinder. In a footnote of a separate motion requesting settlement credits, it said it still seeks a resolution of the lease's expiration. Joinder by footnote is improper.

Because Fort Apache was on notice of its joinder by responding to its brief, the supplemental brief will be treated as a joinder. The expiration of the lease is critical because it affects the outcome of damages and settlement credits.

2.   *Standing.*

Fort Apache says that Short lacks standing to challenge the Southern Star Lease because it is not a third-party beneficiary nor a contracting party.

Short says that, as a defendant in this lawsuit, it has standing to challenge the claim.

The effects of an expired lease would naturally affect Vannie Hrivnatz because she has the rights to the Hrivnatz interest. Short's standing to contest the expiration of the lease is derived from its defense against Fort Apache's trespass claim. It could not have trespassed if the Southern Star lease expired.

It has standing.

3.   *Operations.*

The Southern Star Lease had a primary term of three years to operate on the land. The lease was extended for as long as it remained operational. If it did not operate, then it would expire. A lessee must assertively keep the contract alive through drilling and production of oil.[1] Texas law does not allow a lessee to rely on a co-tenants production of oil to extend the term of a lease.[2]

Short says that the lease expired in 2015 because Fort Apache did not operate on the land in the primary term. It says that Fort Apache cannot rely on Resaca's operations to extend the lease. It insists that Fort Apache should not be entitled to production revenues after 2015.

---

[1] *Hughes v. Cantwell*, 540 S.W.2d 742, 743-44 (Tex. App. Civ. — El Paso 1976).

[2] *Cimarex Energy Co. v. Anadarko Petroleum Corp.*, 574 S.W.3d 73, 89-93 (Tex. App.— El Paso 2019).

Fort Apache says that it attempted to co-develop the property. It says that it was not economically viable to drill on already developed land.

It may be true that it was uneconomical, however, the *Cimarex* court rejected that argument as a reason to justify lack of production. In that case, Cimarex shared an undivided interest in minerals on land with Andarko. Cimarex had unsuccessfully attempted to enter a joint operating agreement and its lease expired. The court said that Cimarex undertook the risk that the other tenant may refuse to agree to jointly operate.

Fort Apache took the same risk. Miller and Resaca rejected the co-development agreement. As a co-tenant, Fort Apache had equal rights and access to produce on the land. It did not. Based on testimony by Fort Apache, it never intended to develop on the land. It relied on a speculative agreement that was rejected.

4. *Repudiation.*

To succeed on a repudiation defense, Fort Apache must show that it relied on the Administrator's repudiation of the lease by suspending operations.[3] If the Administrator repudiated the lease, then Fort Apache would have the right to suspend operations pending a judicial resolution on the validity of the lease.[4] A suit brought by the Administrator to have the lease terminated is a repudiation.[5]

Fort Apache says that the Administrator repudiated the lease in a counterclaim to its 2012 lawsuit. It says that it was waiting to operate pending judicial resolution that challenged the validity of the Southern Start lease during the primary term of the contract. It insists that the Administrator is estopped from claiming the lease expired.

Short says that Fort Apache did not rely on the counterclaim in its lawsuit as repudiation of the lease to suspend operations. It insists that Fort Apache never intended to operate.

---

[3] *Atl. Richfield Co. v. Hilton*, 437 S.W.2d 347, 355 (Tex. Civ. App.—Tyler 1969).

[4] *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 239 (Tex. App.—Corpus Christi 1994).

[5] *NRG Expl., Inc. v. Rauch*, 671 S.W.2d 649, 652 (Tex. App.—Austin 1984).

Fort Apache was lawfully permitted to operate the land as a co-tenant. It was not prevented from doing so. It cannot show that it suspended operations in reliance on the Administrator's repudiation. The repudiation of the Southern Star Lease through the counterclaim did not occur until 2014. Fort Apache said that it never intended to drill. It sought to use litigation as leverage.

Because it never intended to drill, it could not have relied on the later repudiation.

5.  *Ratification.*

In 2015, the Administrator of Vannie's estate ratified the Miller lease.

In 2019, Vannie's two sons – the Administrator of David Hrivnatz estate and Harry Jr. – ratified the Southern Star Lease. The ratification had a retroactive date of the original conveyance in 2009. It also attempted to void the 2015 ratification of the Miller lease.

Fort Apache says that its 2019 settlement with Harry Jr. and the Estate of David Hrivnatz ratified the Southern Star Lease. It insists that this court holding that the lease is superior implies that it did not expire.

Short says that the 2019 ratification in invalid because it occurred after the property had reverted to the Administrator.

The court's opinion said that the lease was superior to the Miller lease because Harry Jr. did not have the power to convey land to Miller Energy. The court said that the 2015 ratification is void because the Miller lease is void. It did not decide whether the lease expired.

The Southern Star Lease was valid because it recorded Vannie's power-of-attorney making Harry Jr. an attorney-in-fact with authority to convey land. The lease conveyed the Administrator's mineral estate as a determinable fee, subject to a vested possibility of reverter.[6] When the lease expired in 2015 for lack of production, the land reverted to the Administrator of Vannie's estate.

Fort Apache attempted to extend the primary term by ratifying the Southern Star Lease retroactively. It says that the beneficiaries in the ratification

---

[6] *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991).

determined that the lease had not expired. The beneficiaries, however, did not have legal title to convey the land or authority to decide whether the lease expired.

The Administrator of an estate holds legal title and superior right to possess estate property and dispose of it.[7] Vannie's two sons did not have the authority to convey the interest in the land because it had reverted after the lease expired. The sons' vested interest in the property was subject to the administration of the estate.

Although Harry Jr. had a power of attorney, Vannie's death in 2012 made it null and void. The Administrator had sole authority to convey interest in the land including extension of a prior lease.

Fort Apache does not offer evidence to the contrary. It relies solely on the 2019 ratification, which is insufficient.

Because the Miller lease is void and the Southern Star lease has expired, the administrator holds legal title and the right to dispose of the property.

6.  *Good Faith Trespass.*

To prevail in a trespass-to-try-title action, a plaintiff must establish superior title. When a producer trespasses and extracts oil, damages are calculated based on whether the producer's actions are in good faith.[8] A good faith trespasser with an honest belief that it had superior title to the mineral estate is liable for the value of the minerals extracted minus drilling and operation costs.[9]

Fort Apache says that the Court's opinion deeming the Southern Star lease superior entitles it to damages for trespass by the defendants with a working interest in the property. It says the working interest holders are liable for the value of the minerals minus drilling and operation costs and attorneys fees. Over five million in damages was reported by Matt Milligan, Fort Apache's chief financial officer. Fort Apache insists the damages are not disputed.

---

[7] *Meekins v. Wisnoski*, 404 S.W.3d 690, 698 (Tex. App. — Houston [14th Dist.] 2013).

[8] *Victory Energy Corp. v. Oz Gas Corp.*, 461 S.W.3d 159, 178 (Tex. App. — El Paso 2014).

[9] *Mayfield v. de Benavides*, 693 S.W.2d 500, 504 (Tex. App. — San Antonio 1985).

Short, Trek Partners, LLC, and Calvin Resources, the working interest holders, dispute the alleged trespass claim in the undivided half of the McBride interest. Short and Calvin say it was not trespass because they are co-tenants. They insist that Fort Apache cannot request damages for trespass and accounting for co-tenant ownership. They say that they have been unable to review the voluminous damages estimate by Milligan.

Trek, alternatively, says that it was not assigned an interest in the property until late 2015 – after the Southern Star lease expired. It also says that Milligan is not an expert.

The defendants with a working interest operated on the undivided one-half interest from the McBride family. As co-tenants, they had a right to possess the land to extract minerals.[10] The co-tenant only owes accounting of the proceeds of oil minus reasonable costs of production and marketing.[11]

The defendants do not show that a trespass claim is mutually exclusive from accounting. No authority supports the notion that Fort Apache cannot also move for damages on a trespass claim. The Texas appellate court said as much.[12]

Fort Apache, nevertheless, cannot succeed on its trespass claim. It does not offer evidence to show that the producers dispossessed it from the land. It does have legal support to show how a co-tenant can trespass on its own undivided property. The good faith trespass claim fails.

The Milligan Declaration is the basis for the damages calculation. Because the Southern Star lease expired in 2015, the damages calculation changes. The producers must have an opportunity to review and respond to the estimate.

Trek was assigned a working interest in the land after 2015. If Fort Apache seeks damages from Trek, it must also show evidence of Trek's net profits to calculate accounting.

---

[10] *White v. Smyth*, 214 S.W.2d 967, 975 (Tex. 1948).

[11] *Byrom v. Pendley*, 717 S.W.2d 602, 605 (Tex. 1986).

[12] *Fort Apache Energy, Inc. v. Resaca Resources, LLC*, (Tex. App. — Beaumont Feb. 18, 2016).

7. *Conclusion.*

Short's claim for expiration of the Southern Star Lease prevails.

Fort Apache's partial judgment on good faith trespass is denied. (230)(320)

Signed on July **21**, 2022, at Houston, Texas.

Lynn N. Hughes
United States District Judge